PENDZSU v BEAZER EAST, INC

McGHEE v BEAZER EAST, INC

Docket Nos. 181268, 181271. Submitted June 19, 1996, at Detroit. Decided October 11, 1996, at 9:25 A.M. Leave to appeal sought.

Arpad A. Pendzsu brought a products liability action in 1992 in the Wayne Circuit Court against Beazer East, Inc., and others, alleging that his asbestosis, which was diagnosed in 1990, is related to asbestos-containing materials in coke ovens installed in the 1930s and relined in the 1960s and 1979 at a Ford Motor Company plant by Beazer's predecessor, Koppers Company, Inc., and in blast furnaces and coke ovens relined and enlarged in 1973 by Koppers at a National Steel Corporation, Great Lakes Division, facility. The court, Robert J. Colombo, J., granted summary disposition for Beazer, ruling that the action was barred by the statute of repose, MCL 600.5839(1); MSA 27A.5839(1).

Amon McGhee, Jr., as personal representative of the estate of Amon McGhee, Sr., brought a similar action in the Wayne Circuit Court against Beazer East, Inc., and others, alleging that the decedent's lung cancer, which was diagnosed in 1990, was related to the asbestos-containing materials in the National Steel blast furnace worked on by Koppers. The court, Robert J. Colombo, J., granted summary disposition for Beazer on the basis of the statute of repose.

The plaintiffs appealed, and their appeals were consolidated.

The Court of Appeals *held*:

1. The statute of repose provides in part that no person may maintain any action to recover damages for bodily injury or wrongful death arising out of a defective and unsafe condition of an improvement to real property against any contractor making the improvement more than six years after the time of use or acceptance of the improvement or one year after the defect is discovered or should have been discovered, but that no such action shall be maintained more than ten years after the time of use or acceptance of the improvement.

2. For purposes of applying the statute of repose to the plaintiffs' actions, the work performed by Beazer's predecessor constituted

improvements to real property inasmuch as the work made the facilities more valuable and useful for their intended purposes.

3. No merit lies in the plaintiffs' argument that Beazer is not subject to the statute of repose because Koppers had been a supplier of materials. It is not disputed that Koppers had been the contractor for the work performed. The statute of repose controls any action against a contractor for injury that arises out of a defective and unsafe condition of an improvement to real property. Also, the supplying of materials was incidental to the role as contractor.

4. The plaintiffs' argument that the application of the statute of repose to asbestos-related claims violates due process rights has been rejected in *O'Brien v Hazelet & Erdal*, 410 Mich 1 (1980).

Affirmed.

LIMITATION OF ACTIONS — NEGLIGENCE — ARCHITECTS — ENGINEERS — BUILDING CONTRACTORS.

"Improvement to real property," as used in the statute that limits actions for damages against state-licensed architects, professional engineers, and contractors for injuries to persons or property or for wrongful death arising out of a defective and unsafe condition of an improvement to real property, means a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs (MCL 600.5839[1]; MSA 27A.5839[1]).

*Zamler, Mellen & Shiffman, P.C.* (by *Neil A. Kay*) (*Daryl Royal*, of Counsel), for the plaintiffs.

*Still, Nemier, Tolari & Landry, P.C.* (by *Thomas S. McLeod* and *Michelle E. Mathieu*), for the defendant.

Before: WAHLS, P.J., and MURPHY and C. D. CORWIN,* JJ.

WAHLS, P.J. Plaintiffs appeal as of right from the trial court's granting of defendant's motions for summary disposition in these asbestos-related actions. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff Arpad Pendzsu worked as a truck driver, cement mixer, and warehouse worker for Standard Fuel Engineering and Zero Refractories. During the course of his employment, he delivered materials and worked near projects at buildings owned by Ford Motor Company and National Steel Corporation, Great Lakes Division. Pendzsu alleges that his work required him to work in areas where asbestos-containing materials were used and that this exposed him to harmful asbestos fibers. Pendzsu was diagnosed with asbestosis on October 30, 1991.

Amon McGhee, Sr., worked as a laborer-maintenance at Great Lakes Steel from 1968 to 1990. During the course of his employment, McGhee worked near furnaces where asbestos-covered steam lines were located. He alleges that he was exposed to airborne asbestos fibers during procedures when the furnaces were rebuilt. He was diagnosed with lung cancer on April 7, 1990.

Defendant Beazer East, Inc. (hereinafter defendant), is the successor in interest to Koppers Company, Inc. In the early 1930s, Koppers Company was the contractor for the installation of two coke ovens at the Ford Rouge Plant. Koppers relined the Ford Rouge coke ovens in the 1960s and in 1979. In addition, Koppers performed relining and enlargement of blast furnaces and coke ovens at Great Lakes Steel in 1973.

On December 23, 1992, Pendzsu filed suit against defendant and forty-two other named defendants, claiming damages for products liability. On June 30, 1993, Amon McGhee, Jr., as personal representative of the estate of Amon McGhee, Sr., filed suit against defendant and twenty-seven other named defendants,

claiming damages for products liability. On September 19, 1994, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(7), stating that plaintiffs' claims were barred by MCL 600.5839; MSA 27A.5839. The trial court granted defendant's motion.

Plaintiffs argue that the trial court erred in granting defendant's motion for summary disposition. When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(7), this Court must accept the plaintiff's well-pleaded allegations as true and construe them in favor of the plaintiff. *Witherspoon v Guilford*, 203 Mich App 240, 243; 511 NW2d 720 (1994). If there are no facts in dispute, the question whether the claim is statutorily barred is one of law for the court. *Id.* This Court reviews the trial court's decision on a motion for summary disposition de novo on appeal. *Smith v YMCA of Benton Harbor/St Joseph*, 216 Mich App 552, 554; 550 NW2d 262 (1996).

The statute of repose, MCL 600.5839(1); MSA 27A.5839(1), provides:

> No person may maintain any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, more than 6 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement, or 1 year after the defect is discovered or should have been discovered, provided that the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or profes-

sional engineer. However, no such action shall be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

Plaintiffs argue, first, that the work performed by defendant's predecessor did not constitute an improvement under the statute, but rather constituted repair work. We disagree. In granting defendant's motion for summary disposition, the trial court incorporated by reference its opinion in a separate case where it held:

> This Court rejects plaintiffs' invitation to start breaking down the improvements in terms of particular components to make a determination what is an improvement to real property and what is not an improvement to real property. There is no question that these systems are an integral part of the power plant and the usefulness to the power plant.
>
> The fact that asbestos products that were used in insulation may have to be replaced does not affect the conclusion that in fact these were improvements to real property and the asbestos is part of that improvement. The asbestos-containing products is what I mean when I say the asbestos.

When courts construe statutes, their primary goal is to ascertain and give effect to legislative intent. *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7, 12; 551 NW2d 199 (1996). This Court should first look to the specific statutory language to determine the intent of the Legislature. *Id.* The Legislature is presumed to intend the meaning that the statute plainly expresses. *Id.* Judicial construction of a statute is not permitted where the plain and ordinary meaning of the language is clear. *Id.*

Here, the statute does not define the phrase "improvement to real property." If a statute fails to define a term, the term will be interpreted in accordance with the Legislature's intent and the term's common and approved usage. *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 168-169; 551 NW2d 132 (1996); *Jennings v Southwood*, 446 Mich 125, 139; 521 NW2d 230 (1994). The purpose of Michigan's statute of repose is to shield architects, engineers, and contractors from stale claims and to relieve them of open-ended liability for defects in workmanship. *Ali v Detroit*, 218 Mich App 581, 587-588; 554 NW2d 384 (1996); *Witherspoon, supra*, p 245.

In *Adair v Koppers Co, Inc*, 741 F2d 111 (CA 6, 1984), the Sixth Circuit Court of Appeals decided a case brought under the Ohio statute of repose. The Ohio statute, like the Michigan statute, applied to actions for damages "arising out of the defective and unsafe condition of an improvement to real property." *Id.*, p 112. The *Adair* court construed the phrase "improvement to real property" according to the rules of grammar and common usage and surveyed the opinions of courts in other jurisdictions that adopted a common-sense interpretation of "improvement" in construing similar statutes. *Id.*, p 113. The court held that an improvement is defined as a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Id.*, p 114; for a similar definition, see Black's Law Dictionary (5th ed), p 682. The court went on to state that, in applying the definition of improvement, "[t]he test for an improvement is not

whether an improvement can be removed without damage to the land, but if it 'add[s] to the value of the realty, for the purposes for which it was intended to be used.' " *Adair, supra,* p 115, quoting *Mullis v Southern Co Services, Inc,* 250 Ga 90; 296 SE2d 579 (1982). Whether a modification adds to the value of the property for the purposes of its intended use, as well as the nature of the improvement and its permanence, should also be considered. *Adair, supra,* p 114. In determining whether work constitutes an improvement rather than a repair, the work must be considered in light of the system, and not just the component:

> "The issue is whether a component of a system which is definitely an improvement to real property is an improvement to real property itself. However, to artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property. Frequently, as in this case, an improvement to real property is going to consist of a complex system of components." [*Id.,* p 115, quoting *Mullis, supra.*]

This Court followed the rationale of *Adair* in *Fennell v Nesbitt, Inc,* 154 Mich App 644, 650-651; 398 NW2d 481 (1986). We too adopt the reasoning of *Adair* and hold that its analysis is consistent with the purpose of Michigan's statute of repose. See *O'Brien v Hazelet & Erdal,* 410 Mich 1, 14; 299 NW2d 336 (1980); *Ali, supra,* pp 587-588; *Witherspoon, supra,* p 245.

Here, the material facts are not in dispute. Defendant's predecessor was retained to design, manufacture, and install two coke ovens at the Ford Rouge plant in the 1930s. Defendant's predecessor relined

the ovens in the 1960s and in 1979. The relining process requires the rebuilding of brick contained within the oven that becomes worn out after continued use. Similarly, defendant's predecessor was the engineering and procurement contractor for relining and enlarging the blast furnaces and coke ovens at Great Lakes Steel in the 1960s and in 1973. Plaintiffs do not dispute the characterization of the installation of a coke oven or a blast furnace as an "improvement." Similarly, the integral role of the coke ovens and blast furnaces as entities in their respective plants is not in dispute.

The fact that the brick that defendant's predecessor installed in the relining process will eventually wear out is not dispositive. The permanency of a component is merely one of the factors considered in determining whether a modification adds to the value of the realty for the purposes for which it was intended to be used. *Adair, supra,* pp 114-115. Like the conveyor system at issue in *Adair, supra,* p 115, and the heating-ventilation-air conditioning (HVAC) system at issue in *Fennell, supra,* p 651, there is no genuine issue of material fact that the relining of the coke ovens and blast furnaces was "integral" to the usefulness of the respective plants. Accordingly, the trial court did not err in applying the statute of repose to plaintiffs' claims against defendant. *Adair, supra,* p 115; *Fennell, supra,* p 651.

Next, plaintiffs argue that the statute of repose does not apply to defendant in its role as a supplier. We disagree. First, plaintiffs never identified the exact building materials for which they claim defendant is liable as a supplier. In any case, it is not disputed that defendant was a contractor for purposes of the stat-

ute of repose. The statute of repose controls "any action" against a contractor for injury that arises "out of the defective and unsafe condition of an improvement to real property." MCL 600.5839(1); MSA 27A.5839(1). Although Michigan case law has not specifically addressed a hybrid situation under the statute of repose, this Court rejected the plaintiffs' attempt in *Fennell, supra,* pp 650-651, to characterize the HVAC system as a product placed into the marketplace. That is analogous to the claim here because, if this Court had accepted the *Fennell* plaintiffs' argument, the *Fennell* defendant would have been the supplier of the HVAC "product."

This issue is also analogous to the manner in which the Uniform Commercial Code, MCL 440.1101 *et seq.;* MSA 19.1101 *et seq.,* deals with a contract that involves a mixture of goods and services. In that context, the court must determine whether the contract's predominant factor, its thrust, its purpose, is the rendition of service, with goods incidentally involved, or is a transaction of sale, with labor incidentally involved. *Higgins v Lauritzen,* 209 Mich App 266, 269; 530 NW2d 171 (1995). Here, assuming arguendo that a supplier of building materials is not controlled by the statute of repose, the supplying of building materials was incidental to defendant's role as a contractor in this case.

A court must look to the object of the statute and the harm that it was designed to remedy and apply a reasonable construction in order to accomplish the statute's purpose. *ABC Supply Co v River Rouge,* 216 Mich App 396, 398; 549 NW2d 73 (1996). As stated earlier, the purpose of Michigan's statute of repose is to shield architects, engineers, and contractors from

stale claims and relieve them of open-ended liability for defects in workmanship. *Ali, supra,* pp 587-588. After reviewing the record, we hold that the trial court did not err in applying the statute of repose to any claims against defendant as a supplier. See *id.*; *Higgins, supra,* p 269; *Fennell, supra,* pp 650-651.

Finally, plaintiffs argue that application of the statute of repose to asbestos-related claims violated plaintiffs' due process rights. This position has been rejected by the Michigan Supreme Court. *O'Brien, supra,* p 15. The Legislature's constitutional power to change the common law authorizes it to extinguish common-law rights of action. *Id.* The Court opined:

> By enacting a statute which grants architects and engineers complete repose after six years rather than abrogating the described causes of action *in toto*, the Legislature struck what it perceived to be a balance between eliminating altogether the tort liability of these professions and placing no restriction other than general statutes to bring tort actions against architects and engineers. The Legislature could reasonably have concluded that allowing suits against architects and engineers to be maintained within six years from the time of occupancy, use, or acceptance of an improvement would allow sufficient time for most meritorious claims to accrue and would permit suits against those guilty of the most serious lapses in their professional endeavors. [*Id.*, p 16.]

The fact that the Legislature has amended the statute since *O'Brien* to include contractors within its scope does not change this analysis. Accordingly, any inequity that this statute imposes on victims of asbestos-related diseases must be addressed to the Legislature.

Affirmed.