*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KRIST OIL COMPANY, QUALITY RENTALS OF HOUGHTON, LLC, KEVIN KING, GREGG NOMINELLI, DEBBIE AGUILAR, ALBERT AGUILAR, PAUL KOVACIC, and ZBIGNIEW BELL,

   Plaintiffs-Appellees,

v

SEMCO ENERGY, INC., doing business as SEMCO ENERGY GAS COMPANY,

   Defendant/Cross-Plaintiff/Third-Party Plaintiff-Appellee,

and

MJO CONTRACTING, INC.,

   Defendant/Cross-Defendant-Appellant,

and

PORTAGE LAKE WATER & SEWAGE AUTHORITY,

   Third-Party Defendant.

UNPUBLISHED
March 20, 2025
10:04 AM

No. 367243
Houghton Circuit Court
LC No. 23-18056-NZ

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

ACKERMAN, J. (*concurring*).

-1-

Today we reverse a trial court decision that aligns with the plain text of the applicable statute—a decision that, on its face, should be correct. I concur in full with today's decision, which is compelled by *Abbott v John E. Green Co*, 233 Mich App 194; 592 NW2d 96 (1998), but write separately to explain how *Abbott* and its progeny misapply the applicable statute and compromise our caselaw.

The statute at issue, MCL 600.5839(1), provides repose periods for actions "to recover damages for injury to property . . . arising out of the defective or unsafe condition of an improvement to real property . . . against any contractor making the improvement[.]" In this case, the "improvement"—namely, the sewer line—was executed by a contractor, and the plaintiffs do not allege any injury resulting from that sewer line. Consequently, because their injury does not "aris[e] out of the defective or unsafe condition of" the improvement, the statute and its repose period should not apply. Nonetheless, in *Abbott*, we specifically held that the statute applies to "workmanship," reasoning that "[c]ontractors would not enjoy the 'repose' that the statute intends to guarantee if plaintiffs, barred from bringing claims arising out of the finished result of an improvement, could nonetheless bring claims arising out of the construction practices employed in making the improvement." *Abbott*, 233 Mich App at 200-201.

Although those policy objectives may be commendable, *Abbott*'s effort to elevate them above the clear language of the statute is problematic. The repose period applies to actions "arising out of the defective or unsafe condition of an improvement to real property" and commences "after the time of occupancy of the completed improvement, use, or acceptance of the improvement." However, work—an intangible concept—cannot be in a "defective or unsafe condition." It has no continuous existence that can be evaluated, nor can it be occupied, used, or accepted. "By its very nature, the term 'improvement' refers to a product, object, or some other tangible item that remains on the real property after the contractor completes his work." *Pitsch v ESE Mich, Inc*, 233 Mich App 578, 601; 593 NW2d 565 (1999). Indeed, we acknowledged that tension in *Abbott* when we noted that the "plaintiffs stress[ed] the statutory language referring to the 'condition of an improvement' to argue that only claims arising out of the finished product are covered . . . ." *Abbott*, 233 Mich App at 201 n 2. Yet we rejected that argument on the basis that, "[w]hen the statute is viewed as a whole . . . and interpreted to advance the purpose of eliminating open-ended tort liability for contractors and other protected parties," labor must be read to be included as part of the "improvement." *Id.* Working backward from the statute's perceived purpose to override its enacted text is a troubling approach.

*Abbott* also makes questionable leaps of logic. To include labor as part of an "improvement," we stated that "[t]he purpose of the statute of repose is to protect engineers, architects, and contractors from stale claims and to eliminate open-ended liability for 'defects in workmanship.'" *Abbott*, 233 Mich App at 200, quoting *Pendzsu v Beazer East, Inc*, 219 Mich App 405, 410; 557 NW2d 127 (1996). We then resorted to a dictionary definition of "workmanship" to include "the manner of construction." *Abbott*, 233 Mich App at 200.[1]  I

---

[1] The phrase "defects in workmanship" in *Abbott* came from *Pendzsu*, which derived it from *Witherpoon v Guilford*, 203 Mich App 240, 245; 511 NW2d 720 (1994), overruled on other grounds by *Ostroth v Warren Regency, GP*, 474 Mich 36; 709 NW2d 589 (2006). *Witherspoon*,

question the propriety of relying on a dictionary definition for a term used in a judicial opinion, since "the language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v Sonotone Corp*, 442 US 330, 341; 99 S Ct 2326; 60 L Ed 2d 931 (1979). We normally consult dictionary definitions to implement the requirement of MCL 8.3a that "[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language"—a safeguard that reflects the separation of powers. *Abbott* could just as easily have relied on our previously approved definition of "improvement" as a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money . . . ." *Pendzsu*, 219 Mich App at 410 (citation omitted). If an improvement "involves the expenditure of labor or money," it cannot *be* labor or money.

Nonetheless, *Abbott* controls. I therefore concur with this Court's disposition of the instant appeal, though I suggest our Supreme Court reexamine this caselaw at an opportune time.

/s/ Matthew S. Ackerman

---

in turn, was summarizing the Supreme Court's discussion of the statute's purpose in *O'Brien v Hazelet & Erdal*, 410 Mich 1; 299 NW2d 336 (1980). *Abbott*'s holding, then, came from a dictionary definition for a word *Pendzsu* repeated from *Witherspoon*'s summary of *O'Brien*'s discussion of the statute's purpose. The result of playing this game of "telephone" is a garbled interpretation of the statute derived not from the statute's language but from *O'Brien*'s discussion of its purpose.